May it please the Court, Counsel. My name is Janet Schreyer, and I represent the defendants in this matter and cross-appellees. I feel like after what I sat through saying, and now for something completely different. We have no habeas issues here in this case. However, we do have issues of important state law. It sounded like that might have been in play in the other cases as well. But I just want you to know that this case has significance not only to these parties, but the public bodies throughout Oregon. I'm going to focus my argument today on the constitutional, the trial court's error in saying there was a constitutional impediment to imposing the cap on the damages that were awarded by the jury in this case. I also want to talk about the certification issue. And I'm just going to very briefly touch on the issue about the crosswalk on the cross-appeal. In 1967, the Oregon legislature abrogated in part the sovereign immunity and enacted the Oregon Tort Claim Act. From that time forward, there have been damages caps on claims against public bodies. We're talking here today about the 1991 version of the statute. It's subsequently been amended. The caps have been raised in amount, but the issues remain the same. In 2001, the Oregon jurisprudence about the remedy clause, the constitutional provision that the trial court used to impose a cap on the damage or to deny us the cap on the damages that the statutes provide, was decided in a case called Smothers. Smothers examined the remedy clause and determined when legislative enactments that interfere with or limit common law claims for relief are unconstitutional. To what extent does our remedy clause keep the legislature from varying remedies that would otherwise have been provided at common law? And in Smothers, the court answered that in a twofold test. They concluded that an injury is protected by the remedy clause if those injuries were one which the plaintiff would have had an absolute right to a remedy in 18 to a common law remedy in 1857 when our Constitution was adopted here in Oregon. They found that even if it was deemed a protected claim under the first part of that test, that under the second part, the legislature can alter the remedy as long as they do not provide an emasculated remedy. So a two-part test, if it's not protected, then the legislature is free to alter or vary it in any way or abolish it in any way it wishes to. Part two of the test, even if it's protected, the legislature is entitled to create a substitute remedy. It simply cannot be an emasculated remedy. And like I said, Smothers was 2001. This is developing jurisprudence in Oregon, and there's a lot of unanswered questions. And that's why we had asked for the certification to the Oregon Supreme Court. It's our view that question number one is answered in such a way that this is not a protected claim. It was not an absolute right to recover on a claim where contributory negligence was in play for the plaintiff in 1857. And consequently, there's no problem with the legislature providing a capped remedy in 2009 or 2010 here today. So we think you answer the first question, no, you don't get to the second question. Even if you get to the second question, we believe that under the facts of this case, here the jury verdict with the comparative fault of the plaintiff resulted in a $507,000 verdict. And under the circumstances, the $200,000 cap we don't believe is constitutionally infirm or leaves plaintiff with an emasculated remedy. But I want to concentrate on the first part of the question because I think that's the most important part, the first part of the Smothers test. Why is this case one that's not protected, and therefore you don't get to the second part of the question? It's because in 1857, there were all kinds of limitations on cases where a plaintiff had violated the law or was in the wrong. And this is clearly that kind of a case because here the plaintiff was found to have been 50 percent at fault herself. In Lawson v. Hoke, there was a statute that said you don't get non-economic damages in a case where you, the plaintiff, didn't have insurance. So they take away non-economic damages. The plaintiff's counsel challenged that on a remedy clause, and the Oregon Supreme Court rejected that challenge. The reason they rejected that challenge is because they said a plaintiff who violates the law or is in the wrong did not have an absolute right to a remedy in 1857 because there were all kinds of different things that could have barred them from recovering. The first thing the Supreme Court said was contributory negligence barred was an absolute bar to a plaintiff at that time. Not that it applied in that case. They just said that was an absolute bar because there were limitations. They didn't have an absolute right. They used other examples, fencing laws. If I didn't fence my animals correctly and I didn't put up a fence and somebody else's animals come in and wreck my property, I can't recover in 1857. Not related to the facts in Lawson, but they said because the legislature did have limitations at that time, they couldn't recover. Another example was Sunday laws. You couldn't drive on Sunday unless it was for a charitable purpose or emergency. So if you violate that law and you go across a pothole, you can't sue the county for the pothole because you are violating the law. The violation of the law didn't directly lead to the injury, but that was the kind of limitation that they had. It's our view that under Lawson v. Hoek, there were limitations in 1857, and therefore, it's not protected, and therefore, the statutory cap applies. I regret that in our brief, in our briefs to this Court, that we answered in the alternative plaintiff's discussions about there was this kind of fault and that kind of fault and emergency doctrine and all those things. I think as I got prepared for argument, about half of the briefing is about the facts of this case and how it might have played out if there had been contributory negligence as opposed to comparative fault before the trial court. None of that makes any difference. Read Lawson v. Hoek. It says because there were limitations in 1857 on cases where a plaintiff had contributed to their own problem or violated the law, even in an unrelated way, those cases are not protected under Article I, Section 10, and therefore, the legislature is free to cap or otherwise alter the remedy. I got to confess, I don't understand that. I'll have to read Lawson again. I didn't understand when I read it the first time. But there are always defenses. And so to take what you say to its logical conclusion, it means, in fact, when they set up a question as whether a plaintiff had alleged an injury is that the common law of Oregon recognized the cause of action for the alleged injury, the answer is always going to be no, because there's always a defense to an alleged cause of action. That can't be the answer. So what is the answer? I think the answer is when – well, for one thing, the cap is never applied until after the verdict comes in. The statute, Oregon Revised Statute 30.269, sub 3, says you don't apply the cap until after the verdict comes in. So you already know that there's comparative fault. But the question is raised in terms of the alleged injury. I mean, it doesn't say in terms of the injury as determined by the jury. It's going back to Smothers. It makes reference to the common law of Oregon recognized the cause of action for the alleged injury. So I view this as a front end, not necessarily limited to a back end determination. Well, I think Lawson v. Hoek demonstrates that that's not true, because in Lawson v. Hoek, the defense, the reason why the limitation on the damages came up is because the plaintiff violated the law. A defendant showed the plaintiff violated the law by not having insurance. Another example is the case of Christensen v. Providence. And in that case, there was a defense of the statute of limitations. And the court looked at the remedy clause challenge and whether they could have a statute of limitations on that, and it recognized it in the context of a defense. And you know by the time the cap is applied what is in play. So not every case where potentially you could have comparative fault. It's our view, it's a little more limited than that, that only in cases where comparative fault is in play. In other words, the plaintiff has been found to have fault on their part, which in turn caused their damage. That's the only question we're asking to be answered here. But how do we not get to those other issues? If we're trying to look at how the individual case has been adjudicated, here you have this 50-50 finding, which is what opens the door to the argument you make with regard to contributory negligence. But if doctrines such as last clear chance existed at that time, too, what prevents a court from looking at it and saying, okay, would this particular episode have produced a remedy in 1857 and give consideration to those other doctrines? Well, because I think the Supreme Court, as demonstrated in Lawson v. Hope, takes a broader view. It's not what did this very plaintiff have and how do these facts play out. The broader question for the remedy clause is did someone in 1857 know, were the claims limited? Was it possible to have limitations on a claim, limitations imposed by the legislature when a plaintiff violated the law or was his or herself negligent? And if limitations were available on that kind of claim to be imposed in 1857, I think the Supreme Court holds that there's no mischief in the legislature also imposing limitations in 2010 or 2008 or 2009 when this case was tried. Your position doesn't seem to be consistent, though, because you ask – it asks us to look back and say, okay, was there a defense that would have foreclosed liability? Even assuming that there was some fault, was there a defense that would have foreclosed liability? But don't look at exceptions that would cause that defense not to be operative. It seems to me if we're going to look back, we're going to look back at the whole and say, okay, this tort, this negligence existed at the time, it was recognized. Contributory negligence was an absolute bar, so maybe there wasn't a remedy. But there were some exceptions to contributory negligence as well, so that maybe it didn't apply in the context of this particular case. Why wouldn't we look at the whole of the laws that existed in 1857? My first answer to that is, even assuming you believe that was correct, in this case, we alleged contributory negligence in our answer as an affirmative defense. Plaintiff was the one to have raised those. Plaintiff failed to raise those. They're not before you. They're mistakes. What would the trial judge have done if he had attempted to do that? I don't think the trial judge would have – he didn't permit us to actually litigate contributory – or contributory negligence, kind of the old-fashioned kind. I think he would have not permitted them to litigate those other things because they're not really in play, and they shouldn't be. The point was they – Well, if contributory negligence is in play for purposes of your remedy cause – purposes of getting the damages, why wouldn't last clear chance be in play? Well, there's a difference between contributory – using those as terms of art. Comparative negligence is the current statutory scheme that allows people to share faults, and contributory negligence, which is the thing the trial judge did not let us allege, was an old-fashioned doctrine that preceded the current statutory comparative negligence scheme that was the absolute bar if there was any comparative negligence at all. But because this isn't about – it's not about how those actually play out in this case, the point is that there were limitations on these cases in 1857, and therefore the remedy clause doesn't protect them because there weren't absolute rights. So it's not that specific how it plays out, otherwise it would never work. Come back to Judge Clifton's question, then. What – I mean, what's the effect of the remedy clause? It seems like it's not a very broad protection. I mean, maybe only those that are strict liability offenses, because every claim has a, you know, potentially a defense. And if I'm following you, you say, oh, no, all we have to show is that there was a defense to this at the time, so it wasn't an absolute – it wasn't an absolute right. And that ends the inquiry. The remedy clause doesn't apply. But the category of offenses where there's no defense has to be very, very small. You're saying this remedy clause applies only to that small category? I'm saying in this case where the jury did come back with a finding that this plaintiff was responsible for her injury. So we do look at the facts, the particular facts of this case. We know – we know one of the limitations – Lawson v. Hoke didn't do that. None of the – I mean, there wasn't even insurance. There were cars. There wasn't auto insurance. That's what Lawson v. Hoke found. That is the finding, Judge Burns, of Lawson v. Hoke. So, yes, I think that's what the Oregon Supreme Court said in Lawson v. Hoke, and it translates to here. However, transitioning to my next argument, you seem skeptical of that. It's not on all fours with Lawson v. Hoke. I can see that. I think Lawson v. Hoke, by application, should have caused the trial judge to impose the cap. But should you feel that you don't know how the Oregon Supreme Court would do it or you question it, it's a very important issue to all litigants in Oregon in tort issues. But what issue would you have us certify to the Oregon Supreme Court? I would have you certify the issue, the question, does the remedy clause guarantee an absolute right to a remedy to a plaintiff where contributory or comparative negligence on the part of the plaintiff is in play or where they have been found to have contributed to their own injury? And I think alternative to that, and again, there's even less law on the question of how do you decide whether, if there is an absolute right, how do you decide whether it's a constitutionally adequate remedy is even a more open question in Oregon law. And I would also ask you to certify the question, if the court finds the remedy clause guarantees a remedy in cases where plaintiff's negligence contributed to his or her injury is a $200,000 cap of a $507,000 verdict constitutionally infirm, does it violate the remedy clause? But they're important issues. Again, we think the law covers it, but I concede it's not exactly 100 percent on point translate, and it's just such an important issue. And the trial judge didn't, you know, he didn't apply the cap. Clearly, here we have case law that's developing in Oregon, and it just seems like the right thing to have the Oregon Supreme Court to have the shot at developing this important jurisprudence. You said one of your arguments was that even if this, even if there was an absolute right to this remedy, that there was no emasculation here by the reduction of the verdict by $307,000. Is there a case law or authority that supports that, other than in broad strokes? Is there? I'm familiar with some of the cases where there was a multimillion-dollar $17 million injury case, a $200,000 cap, and not surprising to anyone, I'm sure, they found that that was, you know, not constitutionally adequate. It was an emasculated remedy. Since that time, just recently, the Ackerman case, at the intermediate      It was an emasculated remedy. $1,400,000 verdict, 28 percent recovery. So $400,000 is what the cap was. It was doubled because there were two public bodies. So a 28 percent recovery. The court of appeals found that to be constitutionally inadequate. They set out factors. We don't think that that is a case that you should look to for several reasons. For one thing, Judge Schuman, who wrote the opinion, who is himself a constitutional scholar, said, essentially, we don't know what the test is, and we are going to make it up based on, here's his words, hints and inferences. And begging the Supreme Court for review, that case did not go on to review. So you're not going to get any answers there, but if you read the opinion, you will see they are literally, he said, I am making this up on hints and inferences. We don't have any guidance. Clark didn't give any guidance because it was so obvious they didn't go into factors. The one case that I will tell you that is, in my view, very important was Hale v. City of Portland. And in that case, the Oregon Supreme Court found on a remedy clause challenge that a $100,000 limit was constitutionally inadequate, was adequate. It upheld it for a $600,000 damages claim. So you might say, why isn't that just, you know, end of story? We have that. Well, because the Supreme Court called Hale v. City of Portland into question in the Clark decision. We believe it called it into question for incorrect reasons, but only the Supreme Court can correct that. You can't say the Supreme Court incorrectly criticized Hale. I mean, only the Supreme Court jurisprudentially, I think, can say that. But there's a case, $100,000, $600,000, they said that was okay. At some point, they're going to have to come up with some kind of a ratio, and we think 39.4 percent, which is the difference between what she came out with, the $507,000, and the $200,000 is a constitutionally adequate ratio. The other thing that the district court was troubled with was that her award of economic damages is significantly greater than non-economic, and that the reduction really, she lost out quite a bit on the economic. And the ultimate recovery was 52 percent of her economic damages. We think there's no point in having a cap if a ratio like that is not acceptable. I mean, either just say there's no cap. Recall, this is a court, the Oregon Supreme Court found in Jensen v. Whitlow, in a certified question from your court, that the Oregon Tort Claim Act, including its tort limits, is constitutionally facially valid. So they blessed it. They just said it's an as-applied. In subsequent cases, of course, the Clark $17 million case, they found it to be a violation. But in subsequent case law, they've talked about that as being specific in limited circumstances. So what we want is something so public bodies can work with it so that you can know there's going to be lots of cases in this 52, 49, 37 percent. We want to know how it works out. Okay. Thank you. Mr. Lisa Clark. My name is Mike Bloom, and I represent Jean Marie Howell. The first thing I want to talk about is preservation. The defendant's argument is based on the premise that the plaintiff could have recovered back in 1857, then or could not have recovered, then the claim is not constitutionally protected, therefore, the legislature is free to cap it. Well, that was never asked of the judge. That was never asked or brought up. There's nothing in the transcript that says that. And there's no document for me responding to that pretrial. And, in fact, if you look at the one mention on contributory negligence that they do respond to, it is at SCR 4-5. Excuse me, SCR 5-6. And what they're saying there is they're saying the due process clause of the United States Constitution entitles them to revive or resurrect contributory fault as a bar all damages, not the cap damages, but the bar all damages. Well, nothing in the blue brief says that. You need to stay pretty close to the microphone. We've got a recording system. I won't be able to hear you. I'm sorry. I have a loud voice. I've been told by my wife, so I'll try to tone that down. But nothing in the blue brief says anything about the United States Constitution, due process, or anything. And that is what the judge read, and that's why he denied that contributory fault defense. It seems to me they raised, that the State raised the contributory negligence common law standard in their answer, and then, as I read the record again, in their trial brief. Yes, and that's exactly what, if you look at their trial brief on page 5, and this is what they say. This is the only place in their trial brief they say, Oregon courts have, they say the Fourteenth Amendment due process clause is broad enough to protect the rights of not only claimants, but those who had defenses available. While the Oregon due process clause appears narrow, the doctrine of the due process under Federal law, and then it goes on, entitles them to raise this contributory fault defense. It's the United States Constitution's due process clause. It's what they say entitles them to do it. Nothing was mentioned about we want to raise this issue, have the jury decide whether she would have recovered in 1857, then we can go ahead and make an argument at the Ninth Circuit, even if you decide against us. The other ---- Kennedy, counsel says, though, that the protocol, procedural protocol under Oregon law is that the verdict comes in first, and only then do the parties in the court turn their attention to whether the cap applies because it emasculates a remedy. Well, I understand that with regard to the damages part, that's true. We look at the damages, and then we figure out the ratios. But that's the second question, really, is whether what she got is the same. In answering that second question, don't you also ask whether or not she would have recovered anything at common law? Oh, I think that the first question is exactly what Judge Clifton and Judge Byrne said, is you look at the front end of this thing. You don't look at the back end because there's numerous defenses. What you do is you look at and say, was there a claim that entitled her to recover damages back in 1857? And if that's true, then we go to the second question. It's not, well, wait a second, there's a venue defense. Or wait a second, there's an assumption of risk defense. Wait, there's a payment according to satisfaction, on and on and on. It's a front-end question. I know we disagree on that. And just to finish up, President Gershengorn. I'm just rendering a question, but your brief criticizes defendants bringing it up pretrial as premature. I'm reading. You say what now? I'm looking at your brief. You acknowledge that defendants did raise in some fashion in a pretrial motion this issue. And then I quote, Of course, the trial court denied defendants' pretrial argument as premature. And the brief goes on to criticize them for not raising it post-trial. On the amounts. And that's why I want the amount is a post-trial question. And why I want to get to this is in the other part of the pretrial memorandum, where they do mention contributory fault. They say, A district court judge in Oregon decided as a matter of law that the Clark cases are limited to medical malpractice cases. And that's not the case. But they say then accordingly, and this is on SER 5, Accordingly, the court should hold in this case, which is not a medical malpractice case as in Clark, the plaintiff's remedies, should she prevail, is limited to 100,000 economic damages and 100,000 non-economic damages. So they're saying because this is a medical malpractice case, no matter what, if you prevail, it's you're capped. The judge said, look, you've alleged these damages. I'm going to deny that. We've alleged millions of dollars in damages. We're going to deny that at this point. And that was premature. That was premature. But, and Judge Pez, it's important to take this a step further. Because this was never on anyone's radar screen, because this was never brought up, you ask, well, what was the judge to do? Well, what were we to do? Were we to try this case under the laws of 1857? If that was brought up to me at trial, I would have said, where do I sign? Simple as that. We cannot win if contributory fault is proved. We're barred. I agree that would be the law in 1857. But we don't reduce damages for plaintiff's fault. And if we prove that the defendant had the last clear chance to avoid the collision, we get a full recovery. If we prove the defendant was grossly negligent, we get a full recovery. If we prove that his actions put the plaintiff in a position of peril, we get a full recovery. I would have signed off on that in a heartbeat. But that was never fleshed out. We never had that brought to us. I imagine they could have said, well, why don't we have alternative parallel jury instructions and verdicts, the 1857 laws and verdict we instruct the jury on in the 2009 instructions and law we instruct. I may have agreed with that. Certainly the jury would have been so confused that I would have been talking last clear chance and gross negligence that maybe we would have skated on all fault. But the point is none of this was done. Now, two things possibly happened. Why wouldn't those issues have been tried to the judge in a post-verdict proceeding? Because they all support the application of the cap, which is essentially a legal issue. Now, I understand there's embedded factual issues. But I'm following your argument now. Why wouldn't you try it under modern-day standards, modern-day law to the jury, you get your verdict, and then this question of the cap arises, and the judge who's determining whether to apply the cap or not apply the cap in light of the Oregon Constitution would then take up the issues that you've discussed. You could say we've got evidence that contributory negligence would not have applied. There was a common law recognized exception. We think we can meet it. We want to put that evidence on. But we'd ask the court to consider the evidence that it's heard in light of that applicable exception. Why wouldn't that have been the proper procedure? And, Judge Burns, there are employment cases where the jury decides to bar that under Oregon law and under state law. So that is possible. The judge determines to bar it. The jury determines to bar it. But that wasn't done. I mean, if it was brought to me or it was said, I'm going to give you a parallel determination, I'm going to listen to the evidence, at least I would have said, Judge, I think the jury has a right to this. But that wasn't done. Now, two things, two reasons why it wasn't done. Either everyone was laying in the weeds and they were willing to risk it and try to get another bite out of the apple. I don't think that was the case. The second possibility is, and I believe this is the case, is they had no clue. It was not on anybody's radar screen at that time. And the reason I say that is if you look at the post-trial motion, 28 to 24, or 24 to 28, if you look at that post-trial motion of theirs, they're asking to reduce the damages. This is after the trial came down, after the verdict came down, excuse me. And all they talk about is ratios and damages. Not one mention of contributory fault is a bar in their memorandum of law seeking to reduce the verdict. You'd think if this major issue, that contributory fault, made this an unconscious protected claim that allowed the legislature to cap this thing and allowed to reduce verdict, you'd see it in a post-trial motion. Now, certainly you'd think. Well, did you respond to that? I mean, as this tennis match is played, if I'm the defendant, I ask, impose the cap. And you expect the plaintiff to come back and give the reasons why the cap wouldn't be imposed. Sure. And then you'd have the defendant come back and say, oh, but it should be here because of. Well, so they put the ball in play by saying impose the cap. What happens after that? But keep in mind, Judge, what I'm saying here is this post-trial motion doesn't matter because it had to be done pretrial to preserve the record. All I'm saying is this is indicative of their state of mind, that this was not on their plate because it doesn't mention it. What happens post-trial? They say apply the cap. What did you say in response to apply the cap? Well, they said that the figures and the amounts were not right. And I said, yes, they are right. And I did respond to that. I said, one, it's not in the substantial equivalent. I said that the economic damages were significant. She had 765,000 economic damages, and she was only awarded 100. The defense stipulated that her medical bills incurred were a half a million dollars. She only got 100. That alone, I said in my reply post-trial, is enough to say that this is a type of remedy that is emasculated. The Court of Appeals in Ackerman has said economic damages itself is something we really look at, out-of-pocket expenses. So here, if this was all brought forth, we would have the answer. At the very least, we would say, jury, would she have recovered in 1857? And you'd have your question here. It would be answered. And you'd be saying, well, is this a front-end question or a back-end question? Because really, like Judge Clifton, you mentioned earlier, that's kind of an issue that they're looking at. But the bottom line is we don't get there. We never got there. And it's not on no one's radar screen. Now, I'm not the sharpest tack in the world, so it's easy it could have got by me. But Judge King is the guy, the mediator, even on the record, who brokered the deal on the legislation that's now in place governing Oregon tort claim claims. He didn't mention it. There's nothing in there that says, wait a second, are you saying that we should allow the jury to determine whether she would have recovered back in 1857? Or do you want me to decide it? No, it wasn't on anyone's radar screen. It was brought up and briefed here before you. So if you could just get to the amounts for a moment. Okay. Why is this an emasculated remedy when it's, what is it, 49.3 or 5? Right. But I think what you need to do, I mean, if you look at Ackerman, and I know that the defendants don't like Ackerman, but Ackerman is a law. The appellate judgment was entered in July, and that is the law of the State, and you give great deference to Ackerman. In Ackerman, they suggested 12,000 economic damages alone that were unremediated is enough to find that this is an objectionable, inadequate. Here, the jury awarded her $765,000. She got, she would get $100,000 under a proposed cap. She stipulated, there's a stipulation by counsel she had over half a million. If you'd only get half of that because of the comparative fault, though, correct? Correct. And she was awarded. So even then, we're looking at less than 20. We're looking, I don't know what it was, 25 percent. It's in the brief. I don't know what my math is, and I could do it in my head. But those type of ratios are really in line with Ackerman. I mean, if you want to split some hairs on Ackerman and say, well, this bodes well for the plaintiffs in Ackerman, well, this bodes well for the plaintiff here, I think that, and I only have 40 seconds left. So one thing I do want to say is that I think there's some preservation issues, and I think the factual issues prevent this Court from reaching the issue they want to reach. We never found out whether she would have recovered in 1857. But if you do reach that, the proposed certification process won't work because   It's a cross-assignment of error because, well, at least proposed by defendants, is because the cross-appeal, even though I appealed it as a cross-appeal, as I said on page 46 of my brief, it was meant to be a cross-assignment of error. In other words, only if we lose this verdict. So asking you to decide that issue and then certifying it to the Supreme Court of Oregon just doesn't make any sense. I see that my time is up in a few seconds. If there are any questions, I'll take them. Otherwise, I'm through. Thank you, Your Honors. We have one minute. I don't want to talk too fast. We believe this is a pure issue of law.  It's purely an issue of law. Clearly, we raise the Oregon Tort Claim Act dollar limit. And our answer is an affirmative defense, pretrial, post-trial. That was an issue that was before the Court. We do not believe the minutiae of whether one thing versus the other thing lasts a clear chance or whatever makes any difference. And you only need to read Lawson v. Hoek to see that. Agree with it, don't agree with it. That's what the Oregon Supreme Court says. That's the law. It's a pure question of law. It was not waived. There's no impediment to you reaching it or certainly certifying that question to the Oregon Supreme Court. Again, there's no reason to raise this cap until afterwards. The statute says the cap doesn't get raised until after the verdict. We did move to substitute ahead of time. That was what the pretrial skirmish was. It was a motion to substitute the individual. Judge King is not without clear error here. He didn't allow us to substitute the individual or the public body for the individual. Well, Jensen v. Medley, Oregon Supreme Court says the statute's facially valid, and so the statute is mandatory. You must substitute. He didn't even understand how the statutes work. It's facially valid. You do substitute. Breyer. It's a common law.  I'm not sure that's the answer. Back in 1857, wasn't the city and municipality entitled to immunity? I don't believe the city was entitled to sovereign immunity. Oh, really? Yeah. I don't believe that they were. But in any event, I don't think the State was, but not the city. Correct. There are certain public bodies that were, and I don't believe the city was. The Ackerman case, the Ninth Circuit Johnson case says that you do follow intermediate court decisions if you don't have a Supreme Court decision, unless there are persuasive reasons not to. It's just a piece of datum for you to look at. We think if you read that one, you will see that it is not an endgame statement about what the factors you're supposed to look at. It did not consider comparative fault. There was nothing involving comparative fault, and expressly said there wasn't any. Two of the factors are things that should be in test number one. There were a lot of flaws with Ackerman. And so, either you would include the facts in the brief and then we point them out in our brief and we would ask you to impose the cap, or certify the question to the Oregon Supreme Court. Thank you. Thank you. The matter is submitted. We appreciate counsel's arguments. And that ends our session for today.
judges: Burns, Paez, Clifton